**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DESIRAE WILLIAMS, | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| CARE.COM, INC. and LIFECARE INC., | : | |
| | : | |
| Defendants. | : | MAY 22, 2023 |

**COMPLAINT**

**JURISDICTION AND VENUE**

1. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; the Americans with Disabilities Act Amendments Act; and Connecticut state law.

2. The jurisdiction of this court is founded upon 28 U.S.C. §1331 (federal question) and the provisions of 28 U.S.C. §1343.

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b) in that the claims arose in this district and Plaintiff resides in this district.

4. Supplemental jurisdiction over Plaintiff's supplemental state law claims is invoked pursuant to 28 U.S.C. §1367 as the claims arise out of the same transaction and occurrences as Plaintiff's federal claims.

5. Costs, expert witness fees, and attorney's fees are sought pursuant to 42 U.S.C. §1988.

**PLAINTIFF**

6. The Plaintiff, Desirae Williams ("Plaintiff" or "Williams") is a natural person and resident of the State of Connecticut.

-1-

## DEFENDANTS

7. The Defendant, Care.com, Inc. ("Defendant" or "Care.com"), is a corporation, Inc. under the laws in the state of Delaware, headquartered in the State of Texas, at 1501 S. MoPac Expwy #340, Austin, TX 78746, and conducts substantial business within the State of Connecticut, at 2 Armstrong Road, Shelton, CT 06484, where Plaintiff was employed.

8. The Defendant, Lifecare Inc. ("Defendant" or "LifeCare"), is a corporation headquartered in the State of Connecticut that conducts substantial business within the State of Connecticut at 2 Armstrong Road, Shelton, CT 06484, where Plaintiff was employed.

9. Care.com and LifeCare (collectively referred to as Defendants) are joint employers within the meaning of the statute.

10. Both Defendants employ more than fifteen (15) employees.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Williams received a Notice of Right to Sue Care.com and LifeCare from the U.S. Equal Employment Opportunity Commission on March 2, 2023. Plaintiff timely brings this action.

## FACTUAL ALLEGATIONS

12. LifeCare hired Williams in August 2019 to perform the duties of Marketing Research Specialist.

13. Williams always performed the duties of her position in a satisfactory manner.

14. Care.com acquired LifeCare in October 2020.

**A. Williams Informs Defendants of her Pregnancy and Requires a Leave of Absence.**

15. In or about early December, 2020, Williams notified the Defendants of her pregnancy.

16. Thereafter, on January 11, 2021, Williams went on a leave of absence, pursuant to her rights under the Family and Medical Leave Act (FMLA) for maternity leave with a prospective return to work date of February 22, 2021.

17. However, after giving birth, Williams began suffering from postpartum depression and anxiety -- covered disabilities under the Americans with Disabilities Act Amendments Act (ADAAA).

18. Due to her ADAAA qualifying serious health conditions, Dr. Omar Sobh, ("Dr. Sobh") Obstetrics & Gynecology, Yale New Haven Health, requested that Williams' medical leave be extended until March 11, 2021.

19. This was communicated to Peggy MacMannis, ("McMannis") (non-pregnant; no known disability) EVP, Human Resources of Care.com on February 18, 2021, at 2:39 PM, documented via email.

20. Unfortunately, Williams' postpartum depression and anxiety did not improve as expected. Thus, Dr. Sobh required her leave to be extended another week until March 18, 2021. This was also communicated to MacMannis, on March 11, 2021, at 9:50 AM documented via email.

21. On March 18, concerned with Williams' medical condition, Linda Pettei ("Pettei"), ARPN required that her leave be again extended, but this time she indicated that Williams should not return to work until the efficacy of her treatment had been established.

22. Williams' medically necessary leave extension request was communicated to Lynn Pattin, ("Pattin"), Senior Total Rewards Specialist (non-pregnant; no known disability), on March 18, 2021, at 5:20 PM, via email.

23. This was the first time that Williams was informed that MacMannis was no longer with the company.

24. Thereafter, Pattin and Williams were in constant communication about payment of health benefits, Williams' ongoing leave status, and her expected date to return to work.

25. Williams was informed by the long-term disability (LTD) department or Prudential Insurance, that she should work with her doctors and her employer to facilitate a return-to-work plan, which could include working part-time. (Previously, Williams had been on short term disability (STD) from January 11, 2021 through April 18, 2021.)

26. Williams was approved of LTD from April 19, 2021 through May 16, 2021.

27. Following her medically necessary LTD, Williams returned to work, full time, on May 17, 2021 through June 30, 2021 -- the date when she was terminated.

28. On May 12, 2021, Williams emailed Pattin in Human Resources to determine if a reduced work schedule could work as an accommodation, as recommended by her doctor and Prudential Insurance Company.

29. As a reasonable accommodation, she asked for temporary part-time work starting on June 21, as it would be helpful to try to work her newly assigned schedule until then.

30. Dr. Pettei provided Williams with a return-to-work date of May 17, 2021, which was sent to Pattin on the same date.

31. Williams effectively returned to work as expected on May 17, 2021.

32. Williams' release to work required accommodations of additional breaks-time for

nursing, and portability of her workstation at the time, i.e., laptop usage.

33. This was also communicated to Pattin, via the communication sent on May 17 containing Williams' return to work letter and again on May 18, 2021, via email.

34. Despite complying with all the requirements on her end, and being as diligent as possible with her return to work and accommodations, Williams was interrogated by her supervisor Loren Beaudoin, ("Beaudoin') (non-pregnant; no known disability), as to her laptop usage accommodation.

35. Williams confirmed that this request for accommodation was reported to Pattin as of May 18, 2021.

36. Beaudoin then said she would reach out to Human Resources (HR) about Williams' accommodations.

37. This was not the only instance in which Williams was subjected to harassing and disparate treatment due to her gender and pregnancy related disabilities.

38. On another occasion, during a meeting, Beaudoin rudely undermined Williams' performance abilities, making her appear inept when she was not.

39. Williams had timely and properly informed Pattin of her request for accommodation. If there was an issue with such an accommodation, it was certainly not Williams' fault, and therefore, it was unjust to attack Williams for alleged lack of diligence on Pattin's behalf.

40. On May 25, 2021, Williams received an email from Pattin, with an attached form for Williams' doctor to fill out.

41. On June 1, 2021, Williams received an email from Pattin, requesting when she would have the form back to her. Williams asked how much time she was allotted before the

document had to be returned and Pattin replied, "[y]ou can return the form at your earliest convenience. This is the process for requesting an accommodation and will need to go through an approval process."

42. On June 15, 2021, Williams submitted the Confirmation of Request For Reasonable Accommodation form completed by Dr. Pettei.

43. In this document, Dr. Pettei indicates "portability of workstation, reduced days/hours" as the accommodations required by Williams.

44. On June 17, 2020, with no reasonable accommodation in place, and being as committed and diligent as always, Williams sent an email to Pattin requesting a status update on her request for accommodation and expressed the high levels of anxiety and emotional distress this situation was causing her.

45. Pattin acknowledged Williams' email and said that her file was being reviewed.

46. Despite sending the required information from Williams' treating health professional, on June 24, 2021, Williams received an email from Pattin stating: "the information provided by your healthcare provider is insufficient to allow us to make a determination."

47. It is worth noting that Williams, aware of the gravity of her postpartum depression and anxiety, had priorly made a request for her work hours to be reduced as an accommodation for her serious health condition.

48. Such an accommodation was at that time denied. Nonetheless, the legit necessity for this accommodation prompted Williams' treating physician to make an additional request, which was unjustly denied by Defendants.

49. On June 25, 2021, Pattin indicated that Williams would need to have her doctor provide

more information such as "the nature of any impairment(s), severity, duration, activities limited by the impairment(s)."

50. Importantly, this was the first time since Williams came back from her maternity leave that Pattin expressed the need for this information.

51. This was also the first time since May 17, 2021, when Williams sent her request for accommodation for the first time that she was told this type of information was required.

52. Because of these newly requested details, Williams asked Pattin if this was a part of the original form request and she replied, yes.

53. Nonetheless, Pattin attached a new form called, "ADA form." This was the first time Williams received this form.

54. Defendants were purposely delaying Williams' request for accommodation process, acting against their duty to engage in a good faith interactive process.

55. On June 25, 2021, Williams replied that she would resend this new form and ask her treating doctor to update it with this specific information.

56. Pattin then said, "Thanks Desirae", and Williams apologized because it was difficult for her, but that she was doing the best that she can.

B. **Williams Is Abruptly Terminated.**

57. To Williams' dismay, on Tuesday, June 29, 2021, only four days after her last communication with Pattin, Williams received an email from Taylor Brian, ("Brian") (no known disability), Manager of Human Resources, stating: "We have made multiple attempts to connect with you," terminating Williams' employment effective June 30, 2021.

58. Williams was in shock considering that her most recent communication with Pattin was

Friday, the week before, on June 25, 2021

59. Williams was barely given four days to provide last-minute required information before Defendants terminated her employment.

60. Defendants caused the 'interactive process' to fail by intentionally not providing Williams with a fair opportunity to obtain the extra paperwork from her treating physician.

61. Despite Williams' multiple requests for accommodation, properly supported by medical certifications, Defendants completely failed in engaging the ADAAA required 'interactive process,' despite knowing of Williams's serious health conditions.

62. Instead, Defendants provided pretextual excuses for Williams's termination, stating that she had "unexcused absences."

63. Within days of requesting an accommodation, on June 29, 2021, Defendants terminated Williams's employment in direct retaliation.

64. Of note, Defendants failed to provide Williams her ADA paper work until May 25, 2021 despite her constant requests for this information.

65. Then, Defendants terminated Williams without providing her with a fair opportunity to gather the information required.

### COUNT ONE

### DISABILITY DISCRIMINATION, IN VIOLATION OF THE ADAAA AGAINST BOTH DEFENDANTS

66. Plaintiff incorporates paragraphs 1-65, with the same force and impact as if fully set forth herein at length.

67. Defendants employ more than fifteen employees.

68. Plaintiff suffered from the disabilities of postpartum depression and anxiety.

69. Due to the severity of Plaintiff's conditions, Plaintiff requested an extension of her original leave period.

70. On May 12, 2021, Plaintiff requested a reasonable accommodation of reduced work schedule. Plaintiff also requested part-time work starting on June 21 as an accommodation.

71. Plaintiff returned to work on May 17, 2021 and her release to work required accommodations of additional breaks-time for nursing, and portability of workstation at the time, i.e., laptop usage.

72. Defendants, however, still questioned Plaintiff regarding her laptop usage accommodation.

73. On another occasion, during a meeting, Beaudoin rudely undermined Williams' performance abilities due to her gender and pregnancy related disabilities, making her appear inept.

74. Williams asked for reasonable accommodations again on June 15, 2021.

75. Defendants failed to provide Plaintiff with the necessary accommodations.

76. While Plaintiff and Defendants were still exchanging information regarding the reasonable accommodations, Plaintiff was subjected to adverse employment actions, including, but not limited to, the following:

    a) Being terminated on June 29, 2021.

77. Defendants' conduct is in violation of the ADAAA.

78. As a result of the Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe

benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

79. Plaintiff seeks damages as a result of Defendants' unlawful conduct.

### COUNT TWO

### DISABILITY DISCRIMINATION
### FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS, AND FAILURE TO ACCOMMODATE, IN VIOLATION OF THE ADAAA
### AGAINST BOTH DEFENDANTS

80. Plaintiff incorporates paragraphs 1-79, with the same force and impact as if fully set forth herein at length.

81. After Plaintiff made Defendants aware of her disabilities, she requested reasonable accommodations multiple times, but Defendants failed to accommodate Plaintiff.

82. Defendants also never engaged in the ADAAA-required "interactive process."

83. Defendants' failure to engage in the interactive process, led to a failure to accommodate the Plaintiff's known disabilities.

84. Defendants' misconduct was based on the Plaintiff's disabilities.

85. Defendants' conduct is in violation of the ADAAA.

### COUNT THREE

### RETALIATION,
### IN VIOLATION OF THE ADAAA
### AGAINST BOTH DEFENDANTS

86. Plaintiff incorporates paragraphs 1-65, with the same force and impact as if fully set forth herein at length.

87. Defendants retaliated against the Plaintiff for engaging in protected activities by subjecting Plaintiff to adverse employment actions, including, but not limited to, the following:

    a)  Being terminated on June 29, 2021.

88. Defendants' termination of the Plaintiff occurred in short temporal proximity --within days after Plaintiff's last request.

89. The above prescribed discriminatory action was motivated by the Defendants' retaliation against the Plaintiff.

90. As a result of the Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

91. Plaintiff seeks damages as a result of Defendants' unlawful conduct.

### COUNT FOUR

**DISCRIMINATION, IN VIOLATION OF TITLE VII OF
THE CIVIL RIGHTS ACT OF 1964
(GENDER, SEX, AND PREGNANCY)
AGAINST BOTH DEFENDANTS**

92. Plaintiff incorporates paragraphs 1-65, with the same force and impact as if fully set forth herein at length.

93. Plaintiff suffered from pregnancy and childbirth-related conditions of postpartum depression and anxiety.

94. Not only did Defendants fail to accommodate Plaintiff adequately, during a meeting, Beaudoin rudely undermined Williams' performance abilities due to her gender and pregnancy related conditions, making her appear inept.

95. Defendants then subjected Plaintiff to adverse employment actions, including, but not limited to: being wrongfully terminated on June 29, 2021.

96. Defendants' actions were motivated by the Plaintiff's female gender and sex and pregnancy.

97. As such, Defendants' actions and conduct are a violation of Title VII.

98. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

99. Plaintiff is seeking damages as a result of Defendants' unlawful conduct.

## COUNT FIVE

### RETALIATION, IN VIOLATION OF TITLE VII OF THE
### CIVIL RIGHTS ACT OF 1964
### (GENDER, SEX, AND PREGNANCY)
### AGAINST BOTH DEFENDANTS

100. Plaintiff incorporates paragraphs 1-65, with the same force and impact as if fully set forth herein at length.

101. Plaintiff participated in protected activities by requesting accommodations for her pregnancy and childbirth-related conditions of postpartum depression and anxiety.

102. Plaintiff suffered adverse employment actions, including, but not limited to being wrongfully terminated on June 29, 2021.

103. Defendants' termination of the Plaintiff occurred in short temporal proximity --within days after Plaintiff's last protected activity.

104. Defendants' actions were motivated by retaliation for Plaintiff's participation in protected activities.

105. As such, Defendants' actions and conduct are a violation of Title VII.

106. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

107. Plaintiff is seeking damages as a result of Defendants' unlawful conduct.

## COUNT SIX

### RETALIATION, IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT, 29 CFR § 825.220 AGAINST BOTH DEFENDANTS

108. Plaintiff incorporates paragraphs 1-65, with the same force and impact as if fully set forth herein at length.

109. The Defendants are considered an employer within the meaning of the FMLA, employing fifty or more employees.

110. "The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 CFR § 825.220(c).

111. Plaintiff began an FMLA maternity leave on January 11, 2021.

112. After several requested extensions, Plaintiff returned to work on May 17, 2021.

113. Plaintiff then suffered adverse employment actions, including, but not limited to, the following:

   a) Being terminated on June 29, 2021.

114. Defendants' conduct was motivated by retaliatory intent for her taking an FMLA leave.

115. As a result of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

116. Plaintiff seeks damages as a result of Defendants' unlawful conduct.

### **PRAYER FOR RELIEF**

Wherefore the Plaintiff prays that this court award:

1. Money damages;
2. Costs;
3. Punitive damages, attorney fees, and expert witness fees;
4. Pre-judgment interest
5. Trial by jury; and
6. Such other relief as the Court deems just, fair, and equitable.

THE PLAINTIFF,
DESIRAE WILLIAMS

By: _____/s/_____
Michael C. McMinn (*ct27169*)
**THE MCMINN EMPLOYMENT LAW FIRM, LLC**
1000 Lafayette Blvd., Suite 1100
Bridgeport, CT 06604

-14-

Tel: (203) 683-6007
Fax: (203) 680-9881
michael@mcminnemploymentlaw.com

*COUNSEL FOR PLAINTIFF*